Van PEMBROOK v ZERO MANUFACTURING COMPANY

Docket No. 80114. Submitted May 21, 1985, at Marquette.—Decided October 7, 1985. Leave to appeal applied for.

In 1969, Joseph Van Pembrook became a sales representative and distributor for Zero Manufacturing Company, a manufacturer of dairy farm related equipment, after having been offered the job by Nick Venechuk, an agent of Zero. After making sales of Zero's products, Van Pembrook found that his customers were having problems with leaks in the bulk storage tanks which he had sold. Van Pembrook spent considerable time and money on repairing the tanks and was never reimbursed by Zero. Following termination of his dealership status by Zero, Joseph Van Pembrook and his wife, Darlene Van Pembrook, commenced in 1982 a breach of contract action in Dickinson Circuit Court against Zero Manufacturing and Venechuk, claiming that Joseph Van Pembrook had been promised that his dealership relationship would net him profits of between $10,000 and $15,000 per year and that, because of the repairs and resulting expenses, he had made no profit. When Zero failed to answer the complaint, plaintiffs secured a default and, following testimony on the question of damages, secured a default judgment against Zero, John D. Payant, J. The default judgment

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 3] Am Jur 2d, Judgments §§ 671 *et seq.*
  Appealability of order setting aside or refusal to set aside default judgment. 8 ALR3d 1272.
[4] Am Jur 2d, Pleading § 130
[5] Am Jur 2d, Evidence §§ 1016 *et seq.*
  Comment note on the parol evidence rule and admissibility of extrinsic evidence to establish or clarify ambiguity in written contract. 40 ALR3d 1384.
[6] Am Jur 2d, Damages §§ 46 *et seq.*
  Recovery based on tortfeasor's profits in action for procuring breach of contract. 5 ALR4th 1276.
[7-10] Am Jur 2d, Judgments §§ 394 *et seq.*
  Modern views of state courts as to whether consent judgment is entitled to res judicata or collateral estoppel effect. 91 ALR3d 1170.
[11] Am Jur 2d, Conflict of Laws §§ 16 *et seq.*
[12] Am Jur 2d, Damages §§ 272, 273.

awarded plaintiffs $225,000 for lost profits for the period 1969 through 1987, $50,000 for labor and mileage incurred by Joseph Van Pembrook in his repair of the defective tanks that he had sold, $28,000 for accounts receivable and $5,000 for attorney fees incurred by plaintiff Joseph Van Pembrook when he was named as a defendant in an action by one of the purchasers of a defective tank manufactured by Zero. When plaintiffs learned that the party upon whom the original summons and complaint had been served was not a corporate officer of Zero, plaintiffs made a new service of process on a person at the address of Zero's principal headquarters. When Zero did not respond to the second service of process, plaintiffs secured a new default judgment with the damage award being as before. Zero thereafter moved to set aside the default judgment. The trial court, John D. Payant, J., denied the motion to set aside the default judgment but did eliminate the travel and labor expense, accounts receivable, and attorney fee portions of the damage award. Zero appealed. Plaintiffs cross-appealed. *Held:*

1. The motion to set aside the default judgment was addressed to the discretion of the trial court.

2. Although the first service of process on Zero was defective, that defect was cured by the second service of process on Zero. The trial court thus properly refused to set aside the default judgment on the basis of the defective first service. Since Zero did not raise in its first responsive pleading the question of whether jurisdiction over it was secured by the second service, that issue is deemed waived.

3. The existence of suits involving plaintiffs and Zero in both the United States District Court for the Eastern District of Missouri and in Menominee Circuit Court did not make Zero's failure to answer in this case excusable neglect.

4. The trial court properly admitted testimony relative to the parol agreement regarding anticipated profits, since that agreement did not vary the terms of the written agreement and was the inducement for the written agreement.

5. The trial court's award for lost profits was supported by the evidence and cannot be said to constitute manifest injustice such as will require the overturning of the trial court's exercise of its discretion.

6. The present action was not barred under the doctrine of res judicata because of the Missouri federal court action brought by Zero against plaintiffs, since the subject matter of the federal court case was distinct from the subject matter of this case.

7. While Missouri law would have required the joinder of the

present cause of action as a compulsory counterclaim, the present action is not barred on collateral estoppel grounds, since the Missouri federal court action was terminated by a consent judgment of the parties which by its terms decided only the claims raised in that case.

8. The trial court properly set aside the mileage and expense, accounts receivable, and attorney fee portions of the award of damages, since plaintiffs had not pled those special damages.

Affirmed.

1. JUDGMENTS — RELIEF FROM JUDGMENTS — APPEAL.

A motion to set aside a judgment or decree is addressed to the discretion of the trial court; a trial court's ruling on a motion to set aside a judgment or decree will not be disturbed on appeal in the absence of a showing of clear abuse of discretion.

2. JUDGMENTS — DEFAULT JUDGMENTS — GOOD CAUSE — MERITORIOUS DEFENSE.

A motion to set aside a default judgment, except when grounded on want of jurisdiction over the defendant, will only be granted upon a showing, supported by an affidavit of facts, of both good cause and a meritorious defense (GCR 1963, 520.4).

3. JUDGMENTS — DEFAULT JUDGMENTS — RELIEF FROM JUDGMENT — GOOD CAUSE.

Good cause sufficient to set aside an entry of default includes such matters as: (1) a substantial defect or irregularity in proceedings upon which the default was based; (2) a reasonable excuse for failure to comply with the requirements which created the default; or (3) some other reason showing that manifest injustice would result from permitting the default to stand (GCR 1963, 520.4).

4. PLEADING — DEFENSES — JURISDICTION.

The defense of lack of jurisdiction over person or property is waived unless the specific basis for the claim is made in the first responsive pleading or by a motion filed prior to the final responsive pleading (GCR 1963, 116.2).

5. CONTRACTS — EVIDENCE — PAROL EVIDENCE.

Extrinsic evidence of antecedent or contemporaneous understandings or negotiations is not admissible for the purpose of varying or contradicting a written contract in which the parties have expressed that the written contract shall be the complete and accurate integration of the contract; however, an independent fact or collateral parol agreement whether antecedent to or contemporaneous with the main written contract may be

proved if it does not interfere with the terms of the written contract even though such fact or parol agreement relates to the same subject matter or served as an inducement for entering into the main written contract.

6. CONTRACTS — DAMAGES — SALES CONTRACTS — PROFITS.

The measure of damages in an action for breach of a sales contract is the profits which the plaintiff would have realized had the plaintiff been permitted to perform.

7. JUDGMENTS — RES JUDICATA.

The plea of res judicata applies not only to points upon which the court was actually required by the parties to form an opinion and pronounce a judgment but to every point which properly belonged to the subject of litigation and which the parties, exercising reasonable diligence, might have brought forward at the time.

8. JUDGMENTS — COLLATERAL ESTOPPEL.

Michigan provides for permissive joinder of counterclaims not arising from the same transaction or occurrence; however, the failure to raise a permissive counterclaim in a suit may estop the raising of the question in a separate action through the application of collateral estoppel where the substance of the unpled counterclaim involves the same issues or subject matter as were raised and decided in the prior suit.

9. JUDGMENTS — COLLATERAL ESTOPPEL — CONSENT JUDGMENTS.

Consent judgments in Michigan are not given collateral estoppel effect, since the parties have not litigated the matters put at issue but have rather merely settled those issues.

10. JUDGMENTS — FULL FAITH AND CREDIT — RES JUDICATA — COUNTERCLAIMS.

A Michigan court is not bound by the full faith and credit clause to dismiss an action brought in Michigan on the basis that a foreign judgment should be given res judicata effect where the res judicata claim is based on a rule of the foreign jurisdiction which requires the bringing of a compulsory counterclaim under circumstances which, in Michigan, would not require the bringing of the counterclaim.

11. CONFLICT OF LAW — PUBLIC POLICY.

Courts are disinclined to overrule the positive law of this state to give effect to the law of a foreign jurisdiction, especially when to do so would contravene the fixed policy of the law of this state.

12. Damages — Special Damages — Pleading — Appeal.

    Special damages must be specifically pled in the complaint when items of special damages are claimed in an action; the Court of Appeals will not consider such damages on appeal when they were not pled in the complaint (GCR 1963, 112.8).

*Lori & Schwedler, P.C.* (by *David J. Lori),* for plaintiff.

*Bruce W. Brouillette,* for Zero Manufacturing Company.

Before: Cynar, P.J., and Hood and R. L. Olzark,* JJ.

Hood, J. Defendant Zero Manufacturing Company (hereinafter defendant) appeals as of right, and plaintiffs cross-appeal, from an order by the trial court modifying a default judgment entered earlier against defendant.

Before contracting with defendant, plaintiff Joseph Van Pembrook operated a bulk milk trucking business. Plaintiff (hereinafter plaintiff in the singular will refer to Joseph Van Pembrook) became acquainted with defendant through defendant Nick Venechuk (who is not a participant in these appeals), who was looking for a representative for defendant in the area serviced by plaintiff's milk trucking operation. Defendant sells bulk milk storage tanks, dairy equipment, pipelines, and the like. Plaintiff decided to supplement his trucking business by selling defendant's products and, in April, 1969, became a sales representative and distributor for defendant in the upper peninsula of Michigan and in northern Wisconsin.

Plaintiff found after making several sales of defendant's products that his customers were having problems with leaking tanks. Plaintiff testified

_____

* Circuit judge, sitting on the Court of Appeals by assignment.

that he spent considerable time and money repairing the tanks and was never reimbursed by defendant. He also claimed that defendant promised that plaintiff would net between $10,000 and $15,-000 a year in profits, but that, due to the repairs and resulting expenses, he made no profit. Plaintiff stopped selling defendant's products in December, 1980, when his dealership was taken away by defendant.

Defendant filed a complaint against plaintiffs in the United States District Court for the Eastern District of Missouri in 1980. On December 11, 1981, the parties entered a stipulation and consent to judgment in which plaintiffs agreed to pay defendant $5,000 at the time of the judgment and $5,000 within one year.

Plaintiffs filed a complaint against defendant in the Dickinson County Circuit Court on October 26, 1982. Plaintiffs secured a default against defendant in January, 1983, and a default judgment was entered on February 22, 1983.

After the judgment was entered, plaintiffs learned that the party on whom they had made the original service of process was not a corporate officer of defendant and thereafter served defendant a second time. A first amended judgment based upon this second service was entered on August 8, 1983. As in the first default judgment, the court awarded plaintiffs $225,000 for loss of expected and anticipated profits, $50,000 for labor spent and mileage incurred as a result of additional problems resulting from the misrepresentations and the actual condition of the products received and sold by Joseph Van Pembrook to his customers, $28,000 for accounts receivable, and $5,000 for attorney fees incurred by plaintiff in a lawsuit in Menominee County in which plaintiff and defendant were both being sued by a Mr.

Zaharias, one of plaintiff's customers to whom he had sold defendant's goods.

Defendant brought a motion to set aside the default judgment on December 7, 1983. After a hearing, the court held that defendant had demonstrated a meritorious defense because the person who had been initially served was not an officer or director of defendant but that defendant had failed to show good cause. The trial court further noted that setting aside the judgment in its entirety would result in a grave injustice as Joseph Van Pembrook, now deceased, was actually the sole operator of the business. Since he is no longer available to testify, the court reasoned that plaintiff's case could not be effectively prosecuted. In the court's view, because the delay in resolving plaintiff's action was caused by defendant and not plaintiff, it would be manifestly unjust to set aside the default judgment. The court accordingly entered an order denying defendant's motion to set aside the entire judgment and granting the motion to set aside those provisions of the judgment dealing with damages other than for loss of expected and anticipated profits. These appeals followed.

A court's ruling on a motion to set aside a judgment or decree is discretionary and will not be disturbed on appeal unless a clear abuse of discretion is shown. *Freeman v Remley,* 23 Mich App 441, 448; 178 NW2d 816 (1970). Except when grounded on want of jurisdiction over the defendant, both good cause and a meritorious defense, supported by an affidavit of facts, must be shown before a motion to set aside a default judgment can be granted. GCR 1963, 520.4; *Butler v Cann,* 62 Mich App 663, 668; 233 NW2d 827 (1975).

Good cause sufficient to set aside an entry of default under GCR 1963, 520.4 includes such matters as 1) a substantial defect or irregularity in the

proceedings upon which the default was based, 2) a reasonable excuse for failure to comply with the requirements which created the default, or 3) some other reason showing that manifest injustice would result from permitting the default to stand. *Midwest Mental Health Clinic, PC v Blue Cross & Blue Shield of Michigan,* 119 Mich App 671, 674; 326 NW2d 599, *lv den* 417 Mich 1076 (1983). While the first two elements of good cause are readily definable, a determination of what constitutes manifest injustice will depend upon the circumstances peculiar to each individual case. In this case defendant claims that lack of jurisdiction, as well as all the foregoing elements of good cause, is present.

Defendant first claims that the trial court erred in refusing to set aside the entire default judgment on the basis that it lacked jurisdiction over the defendant. Defendant claims that service on it was not properly effectuated.

The record reveals that plaintiffs initially served a summons and complaint on Ed Roberts, defendant's manager. Defendant's failure to respond to this service in any way was the basis of the first default judgment entered against it.

Upon learning that Roberts was not a corporate officer of defendant, plaintiffs served defendant a second time by addressing the summons and complaint to G. R. Duncan, Sr., at defendant's address. The first amended judgment was the result of defendant's failure to respond to this second service.

The trial court found that the defendant had a meritorious defense in that the first service on it was defective, but that it had not established good cause. Therefore, the trial court refused to set aside the entire default judgment. While we agree that the first service was defective, we find that

this would have been an insufficient reason to set aside the default judgment because the defective service was subsequently cured by the second service on defendant. Defendant's contention that this second service was also defective is without merit.

Defendant argues that pursuant to GCR 1963, 105.4(2) proper service required that plaintiffs leave a copy of the summons and complaint with the directors, trustee, or person in charge of the office at defendant corporation and send a copy of the summons and complaint by registered mail to the corporation's office. Defendant takes the position that while plaintiffs served only G. R. Duncan, admittedly at the same address as defendant's principal headquarters, plaintiffs were also required to address a copy of the papers to the defendant corporation but did not. Therefore, defendant says the service was improper and the trial court lacked jurisdiction over defendant.

Defendant did not raise this issue below. The defense of lack of jurisdiction over the person or property is waived unless made in the first responsive pleading or by motion first filed. GCR 1963, 116.2. While it appears defendant did point out to the trial court that the first service on it was defective, defendant never attacked the effectiveness of the second service on it. Moreover, it appears that G. R. Duncan was defendant's resident agent and therefore separate service on defendant was not required pursuant to GCR 1963, 105.4(1). Therefore, we decline to review this issue on appeal.

Defendant next argues that the judgment should be set aside because it established that its failure to answer the complaint was caused by mistake or excusable neglect. Defendant explains that it was involved in two other cases with the plaintiffs

besides the present suit. One case was heard in the United States District Court for the Eastern District of Missouri in which defendant sued the plaintiffs for breach of the sales agency agreement at issue in this case. The other action was brought in Menominee County, Michigan, in which defendant and plaintiff were joined as defendants. Defendant claims that, either personally or through its attorney, it was aware that both federal and Missouri law provide for compulsory counterclaims. Defendant was therefore misled to believe that the documents it received could not be a new lawsuit concerning the same sales agreement which had been litigated in federal court in Missouri.

This explanation is different from that argued to the trial court. In the trial court defendants argued that the agents of the defendant corporation were confused because of the Missouri and Menominee County cases or that it thought the trial court in this case would take judicial notice of the effect of the compulsory counterclaim rule in the Missouri case on the present case and dismiss the present case *sua sponte.*

We find both of defendant's arguments to be incredible and hold that defendant's failure to answer or take other action constituted inexcusable neglect. As the trial court noted, defendant did not suggest that it never received a summons or a copy of the complaint. A failure to respond to admittedly received pleadings under these circumstances hardly rises to the level of mistake or excusable neglect.

Further, the pleadings in this case and the captions on the pleadings in the other cases are not similar at all. Regardless of the circumstances, defendant was obligated to respond in some way to plaintiffs' action and its failure to do so was inex-

cusable. Therefore, the trial court did not err in finding that defendant did not establish good cause on this ground.

Defendant next contends that manifest injustice will result if the default judgment is allowed to stand. Defendant's first basis for this argument is that the award of damages is without evidentiary support and should shock the conscience of this Court.

As the award now stands, plaintiffs are to receive $225,000 for the loss of expected and anticipated profits. This award was based upon plaintiff's testimony that defendant, through its agent Nick Venechuk, told him that he would be set up in a territory that would yield net profits of $10,000 to $15,000 a year. The award was arrived at by taking the average of the anticipated profits per year, or $12,500, and multiplying that average by 18, or the number of years between 1969 and 1987 which was the period during which Van Pembrook expected to realize the profit level he was promised. Defendant contends this testimony should have been excluded from the trial court's consideration by the parol evidence rule.

Defendant claims that, by virtue of the merger clause in the written sales agency agreement between plaintiffs and defendant, the agreement is complete and contains all the terms agreed to by the parties. Since the written agreement is silent on the promise of profits, defendant asserts that plaintiff's testimony concerning what Nick Venechuk had told him should have been barred by the parol rule evidence. We disagree.

The parol evidence rule provides that, when two parties have made a contract and have expressed it in a writing which they both have agreed to as being a complete and accurate integration of that contract, extrinsic evidence of antecedent and con-

temporaneous understandings and negotiations is inadmissible for the purpose of varying or contradicting the writing. *Kassin v Arc-Mation, Inc,* 94 Mich App 520, 525; 288 NW2d 413 (1979); *Michigan Bank, National Ass'n v William J Kahlich, Inc,* 23 Mich App 483, 488; 179 NW2d 29 (1970). However, this rule is not without qualifications. The Supreme Court in *Stimac v Wissman,* 342 Mich 20, 25-26; 69 NW2d 151 (1955), held that:

> " 'Any independent fact or collateral parol agreement, whether contemporaneous with or preliminary to the main contract in writing, may be proved, provided it does not interfere with the terms of the written contract, though it may relate to the same subject matter.'
>
> \* \* \*
>
> "The rule excluding parol evidence to vary or contradict a writing does not extend so far as to preclude the admission of extrinsic evidence to show prior or contemporaneous collateral parol agreements between the parties. The general rule admitting evidence of a collateral agreement is especially applicable where such agreement operates as an inducement for entering into the written agreement."

Based upon plaintiff's testimony in the case at bar, the trial court found that the representations made by defendant's representative were false to a certain extent and that plaintiff had relied upon those representations to his detriment. The testimony was not used to vary or alter the terms of the written contract but was admitted to show the circumstances under which it was entered into. This was a proper use of the evidence. Therefore, we find no manifest injustice on this basis.

Defendant also argues that the award of damages are far too high because plaintiff was terminated from his employment in 1980 and should

not have received any damages for the period subsequent to his termination. The trial court awarded plaintiffs damages up to the year 1987 based upon plaintiff's belief that, had the products been as warranted to him when purchased, he would have continued in the business up until that time.

The measure of a plaintiff's damages in an action for a breach of a sales contract is the profits which the plaintiff might have realized had he been permitted to perform. *Callender v Myers Regulator Co,* 250 Mich 298, 300; 230 NW 154 (1930). Since plaintiff's testimony established that defendant's breach prevented him from performing the terms of the sales contract, we do not find an award of damages for a reasonable amount of time after the termination of the contract to constitute manifest injustice.

Defendant also contends that, because plaintiffs filed this suit in 1982, the six year statute of limitations for contracts precludes plaintiffs from recovering for any damages prior to 1976. While we recognize that this may be a defense to the award of damages, we do not find that it rises to the level of manifest injustice.

Based upon the meager record before us we find that plaintiffs may have had a defense to the statute of limitations had defendant timely appeared and raised this issue. Plaintiffs' complaint alleges that defendant "continually refused to take reasonable activities as required for repair of products distributed by them and further did fail to properly advise individuals such as your said plaintiffs concerning the problems which existed in connection with certain of said products, but instead continued to promote the sale and distribution of said products well knowing that same were defective".

Plaintiff testified that the tanks were constructed of an inferior material that would corrode causing leaks and that defendant sold these defective tanks to him for seven or eight years before informing plaintiff of this defect. Plaintiff further testified that defendant would occasionally send a repairman to help plaintiff fix the tanks but that the problem was really in the use of the defective material.

These allegations and evidence indicate that the period of limitations for plaintiffs' cause of action may not have started running until the defect in the tanks was discovered. Compare *Weeks v Slavik Builders, Inc,* 24 Mich App 621, 629; 180 NW2d 503 (1970), *aff'd* 384 Mich 257; 181 NW2d 271 (1971). Further, defendant has not pled with sufficient particularity facts which indicate otherwise. Because plaintiff Joseph Van Pembrook is no longer available to testify on this point, we find that plaintiff Darlene Van Pembrook would be prejudiced if defendant were allowed to raise this issue now. Therefore, we find no manifest injustice in allowing plaintiffs to recover for damages incurred from the inception of the contract.

Defendant's final claim is that because of the consent judgment entered against plaintiffs in the Missouri case plaintiffs' present cause of action is barred by (1) the doctrine of res judicata or (2) the plaintiffs' failure to raise this claim as a counterclaim in the Missouri suit. We disagree on both counts.

Michigan applies the doctrine of res judicata broadly so as to include not only points upon which the court was actually required by the parties to adjudicate but also to include "every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at

that time". *Carter v Southeastern Michigan Transportation Authority,* 135 Mich App 261, 264; 351 NW2d 920 (1984), citing *Harrington v Huff & Mitchell Co,* 155 Mich 139, 142; 118 NW 924 (1908).

According to Justice COOLEY: "The subject matter involved in a litigation is the right which one party claims as against the other, and demands the judgment of the court upon * * *." *Jacobson v Miller,* 41 Mich 90, 93-94; 1 NW 1013 (1879). Applying this to the case at bar we first conclude that the Missouri suit did not involve the same subject matter as the present action.

The action in the Missouri court was instituted by defendant to recover sums due and owing on a promissory note and by virtue of plaintiff's account for goods sold by defendant to plaintiff pursuant to the sales agency agreement. The action in the present case is premised upon breach of the sales agreement by virtue of the defendant's mispresentations as to the quality of the goods sold. These causes of action are distinct in subject matter and require entirely different sets of proofs.

Because plaintiffs' cause of action is not a defense which is "sought to be made use of in the retrial of a dispute respecting the same subject matter of the former litigation", *Jacobs v Miller, supra,* p 96, we do not find that the principal of res judicata operates to bar plaintiffs' claim.

The second basis of defendant's argument is grounded on the Missouri Rules of Civil Procedure, Rule 55.32(a), which provides for compulsory counterclaims and cross-claims. Under the rule, a counterclaim is compulsory if it arises from the same transaction or occurrence that is the subject matter of the opposing party's claim.

In *State ex rel J E Dunn, Jr & Associates, Inc v Schoenlaub,* 668 SW2d 72, 75 (Mo, 1984), the Mis-

souri Supreme Court explained the terms "subject matter" and "transaction" as used in the compulsory counterclaim rule:

> "It is not necessary that the opposing claims be conditional upon each other. And the term 'subject matter' does not * * * limit the scope of compulsory counterclaims to only those claims which are of the same nature or seek the same relief. Rather, the subject matter of the opposing party's action more appropriately 'describes the physical facts, the things real or personal, the money, lands, chattels, and the like, in relation to which the suit is prosecuted.' Obviously, then, 'transaction' within the meaning of Rule 55.32 is to be applied in its broadest sense." (Citations omitted.)

Utilizing these constructions of the terms "subject matter" and "transaction", it appears, therefore, that the Missouri compulsory counterclaim rule would bar plaintiffs' present action had it been brought in a Missouri court. However, the same result is not achieved in this state.

In Michigan, GCR 1963, 203 (now MCR 2.203) generally provides for the permissive joinder of counterclaims not arising from the same transaction or occurrence. However, the time for presenting a counterclaim is not always within a defendant's option. *Sahn v Brisson,* 43 Mich App 666, 671; 204 NW2d 692 (1972). Through the application of collateral estoppel in Michigan, "[t]he failure to assert a counterclaim stemming from the same issues or subject matter in a prior suit will estop a defendant from afterwards maintaining a separate action on that counterclaim against the plaintiff in the prior suit". *Sahn v Brisson, supra,* p 671, citing *Paccalona v Peninsula Bank & Lumber Co,* 171 Mich 605; 137 NW 518 (1912); *Gursten v Kenney,* 375 Mich 330; 134 NW2d 764 (1975). For the following reasons, however, collateral es-

toppel may not be applied to consent judgments in Michigan:

"First, collateral estoppel rules do not require that a consent judgment bind a party to facts which were originally in issue in the action that was settled. A consent judgment reflects primarily the agreement of the parties. *Dora v Lesinski,* 351 Mich 579, 582; 88 NW2d 592 (1958). The action of the trial judge in signing a judgment based thereon is ministerial only. The parties have not litigated the matters put in issue, they have settled. The trial judge has not determined the matters put in issue, he has merely put his stamp of approval on the parties' agreement disposing of those matters. But a judgment can be given collateral estoppel effect only as to those issues which were actually and necessarily adjudicated. *Howell v Vito's Trucking and Excavating Co,* 386 Mich 37, 42; 191 NW2d 313 (1971). It follows that because the issues involved in the settled case were not actually adjudicated, one of the prerequisites to giving a judgment collateral estoppel effect is not satisfied. Thus, the answer to the question posed above is: Nothing is adjudicated between two parties to a consent judgment." *American Mutual Liability Ins Co v Michigan Mutual Liability Co,* 64 Mich App 315, 327; 235 NW2d 769 (1975), *lv den* 395 Mich 830 (1976) (footnotes omitted).

In the present case, the consent judgment disposing of the Missouri suit stated only that all claims, demands and causes of action of the defendant's arising out of or based on the matters set forth in it's complaint were merged, settled and discharged by the judgment. The consent judgment was silent on any barring effect as to the plaintiffs' counterclaims against defendant. Since the consent judgment was entered into to dispose only of defendant's claims under the sales agency contract to recover the purchase price of items sold to the plaintiffs, it follows the issues in this case were never adjudicated. Therefore, there is no rule of

law in Michigan that would bar the plaintiffs' present action.

The larger question remains however: To what extent must the compulsory counterclaim rule of Missouri be afforded full faith and credit?

The full faith and credit clause of the United States Constitution requires that a foreign judgment be given "the same effect that it has in the State of its rendition". *Johnson v Haley,* 357 Mich 411, 418-419; 98 NW2d 555 (1959); *Beck v Westphal,* 141 Mich App 136, 140; 366 NW2d 217 (1984). The purpose behind the full faith and credit clause as applied to judicial proceedings is to avoid "relitigation in other states of adjudicated issues". *Sutton v Lieb,* 342 US 402, 407; 72 S Ct 398; 96 L Ed 448 (1952). However, fulfillment of that purpose does not depend on extraterritorial application of essentially procedural res judicata rules. *Chapman v Aetna Finance Co,* 615 F2d 361, 353 (CA 5, 1980). The rationale behind the Missouri compulsory counterclaim rule is to avoid multiplicity of suits and to facilitate the proper and expeditious disposal of litigation. *State at the Relation of Davis v Moss,* 392 SW2d 260, 264 (Mo, 1965). This local interest in judicial economy is separate and distinct from the national interest in avoiding the relitigation of adjudicated claims.

Because it forfeits an unlitigated claim, Missouri's compulsory counterclaim rule is analogous to statutes of limitations, which are not ordinarily entitled to full faith and credit in foreign jurisdictions. See *Chapman v Aetna Finance Co, supra,* citing *Wells v Simonds Abrasive Co,* 345 US 514, 516-18; 73 S Ct 856; 97 L Ed 1211 (1953); *cf. Nevada v Hall,* 440 US 410, 421-24; 99 S Ct 1182; 59 L Ed 2d 416 (1979), quoting *Pacific Employers Ins Co v Industrial Accident Comm,* 306 US 493; 59 S Ct 629; 83 L Ed 940 (1939). For full faith and

credit purposes, therefore, we find that Missouri's compulsory counterclaim rule is more properly a legislative act rather than an inherent part of the judgment. Therefore, full faith and credit does not compel the dimissal of the present claim. *Cf. Chapman v Aetna Finance Co, supra.*

The next question is whether effect should be given to the Missouri compulsory counterclaim rule out of comity.

In recognizing and enforcing the laws of another state, this Court is disinclined to overrule the positive law of this forum to give foreign law effect especially when it would contravene the fixed policy of the law of this state. *Mount Ida School for Girls v Rood,* 253 Mich 482; 235 NW 227 (1931). The public policy of this state is fixed by its constitution, its statutes and the decisions of its courts. *Branyan v Alpena Flying Service, Inc,* 65 Mich App 1, 8; 236 NW2d 739 (1975); *Lieberthal v Glens Falls Indemnity Co,* 316 Mich 37, 40; 24 NW2d 547 (1946).

As mentioned earlier, Michigan courts have found that consent judgments do not satisfy the legal requirements of collateral estoppel. *American Mutual v Michigan Mutual, supra.* Moreover, there are persuasive policy reasons for refusing to apply collateral estoppel to consent judgments:

"The social interest in reducing instances of costly litigation is undermined by a rule which provides drastic consequences for settlements. One will tend to avoid a settlement rather than be later bound in potentially far-reaching, and often unintended, ways by facts imbedded in an otherwise innoccuous settlement agreement. Because the application of the doctrine of collateral estoppel to consent judgments will in many cases be unforeseeable, consent judgments may become less desirable, thus impeding and embarrassing the settlement process. As Professor James puts it: 'Any rule

which tends to assure contest rather that compromise * * * probably tends, on balance, to increase rather then decrease litigation.'

"Moreover, refusing to construe consent judgments as adjudicating the issues joined therein will not threaten any legitimate expectations of repose, since none of the parties to the consent judgment ever bargained for such protection. Nor will a rule giving collateral estoppel effect to consent judgments promote judicial consistency, since the judges are not deciding anything. In short,

" 'Where the parties to a consent judgment have not agreed to be * * * bound [collaterally upon a certain point], the rules pertaining to the effect of judgments do not require that they should be, and the relevant consideration of policy and expediency require that they should not be.' " *American Mutual v Michigan Mutual, supra,* pp 327-328 (footnotes omitted).

We find that this policy would be contravened were we to hold that plaintiffs' present claim is barred. Therefore, we decline to give extraterritorial effect to Missouri's compulsory counterclaim rule in this case.

The final issue we address is plaintiffs' contention that the trial court erred in modifying the award. We find no such error.

Under the terms of the default judgment originally entered against defendant, plaintiffs, in addition to $225,000 for loss of expected and anticipated profits, were awarded $50,000 for labor spent and mileage incurred as a result of additional problems resulting from the misrepresentations in the actual condition of the products received and sold by Joseph Van Pembrook to his customers, $28,000 for accounts receivable, and $5,000 for attorney fees for the lawsuit in Menominee County in which defendant and plaintiff were named as codefendants.

After the hearing on defendant's motion to set aside the default, the court modified the judgment

to set aside the $50,000 for labor and mileage, the $28,000 for accounts receivable, and the $5,000 for attorney fees. The court stated that it did not believe that those damages naturally flowed from the alleged injury and that plaintiffs' failure to specifically aver those damages prevented plaintiffs from recovering such damages. The court therefore set aside a portion of the judgment pursuant to GCR 1963, 528.3.

Under GCR 1963, 112.8, when items of special damage are claimed, they must be specifically stated. If not, the Court will not consider them on appeal. *Bourke v Warren,* 118 Mich App 694, 699; 325 NW2d 541 (1982).

In Michigan, it is merely required that the injury sought to be proved must be the natural result of the injury complained of in the pleadings. *McDuffie v Root,* 300 Mich 286, 293-294; 1 NW2d 544 (1942). If such injury can be traced to the act complained of and is such as would naturally flow from the alleged injury, it need not be specifically averred. *Id.*

Plaintiffs in their complaint alleged that as a result of defendant's breach of contract plaintiffs suffered damages in the form of loss of profits, loss of good will, and substantial emotional distress and nervous anxiety. Plaintiffs did not aver special damages in the form of expenses for mileage and labor, accounts receivable, and attorney fees in the Menominee County action. Nor can it be said that these damages flowed naturally from defendant's alleged breach of contract or the other types of damages or injuries claimed by plaintiffs. We conclude that plaintiffs' complaint did not reasonably inform defendant of these types of damages, and that the lower court correctly modified the judgment.

Affirmed.