# STATE OF MICHIGAN

# COURT OF APPEALS

LINDA BASS,

      Plaintiff-Appellant,

v

KEVIN J. PETERS and SERAFINI
MICHALOWSKI DERKACZ & ASSOCIATES,
PC,

      Defendants-Appellees.

UNPUBLISHED
October 26, 2017

No. 332217
Oakland Circuit Court
LC No. 2015-150655-NM

Before: GLEICHER, P.J., and M. J. KELLY and SHAPIRO, JJ.

PER CURIAM.

Plaintiff appeals from the trial court's dismissal of her case on the grounds of res judicata. Because we agree that res judicata does not apply in the circumstances presented, we reverse and remand.[1]

Defendants represented plaintiff in post-divorce litigation seeking, *inter alia*, a change in parenting time and modification of child support. After the litigation was concluded, plaintiff failed to pay an outstanding bill. Defendants filed a collection suit in the 48th district court against her on or about September 21, 2015. Plaintiff failed to answer the complaint. On November 11, 2015, defendants filed a default and default judgment request with the clerk of the court. Because plaintiff had not appeared in the district court action and because the district court complaint was for a sum certain, defendants were not required to file a motion for default

---

[1] We review de novo a trial court's grant of summary disposition under MCR 2.116(C)(7). *Washington v Sinai Hosp of Greater Detroit*, 478 Mich 412, 417; 733 NW2d 755 (2007). A trial court should grant summary disposition under MCR 2.116(C)(7) where res judicata bars the plaintiff's claims. *Schwartz v Flint*, 187 Mich App 191, 194; 466 NW2d 357 (1991). When reviewing a grant of summary disposition under MCR 2.116(C)(7), this Court must consider the pleadings, depositions, affidavits, and any other evidence in favor of the party opposing the motion. *Herman v Detroit*, 261 Mich App 141, 143-144; 680 NW2d 71 (2004). We also review de novo the issue of whether res judicata bars a claim. *Washington*, 478 Mich at 417.

-1-

judgment with the court, and the default judgment was entered by the clerk. MCR 2.603(2). The default and the default judgment were both entered by the clerk on the same date, November 20, 2015.

On December 17, 2015, plaintiff filed a complaint for legal malpractice against defendants. The suit alleged that defendants failed to conduct necessary discovery or retain an expert to determine and demonstrate the extent of her ex-husband's income and assets, and that defendants recommended that she agree to a settlement under which child support would be non-modifiable thereafter.[2] In lieu of filing an answer, defendants filed a motion to dismiss claiming that the district court's collection suit, in which it had obtained a default judgment, constituted res judicata as to all claims arising out of their representation of plaintiff in the post-judgment motion. The trial court agreed and dismissed the case on this basis.

As a general rule, res judicata requires establishing three elements: "(1) the first action was decided on the merits, (2) the matter contested in the second action was or could have been resolved in the first, and (3) both actions involve the same parties or their privies." *Sewell v Clean Cut Mgt, Inc*, 463 Mich 569, 575; 621 NW2d 222 (2001), quoting *Dart v Dart*, 460 Mich 573, 586; 597 NW2d 82 (1999). Michigan has adopted the "transactional" view of res judicata and so the question is not whether the evidence in the two claims would be identical, but rather, whether the parties, exercising reasonable diligence, could have raised every claim arising from the same transaction, but did not. *Adair v State*, 470 Mich 105, 121; 680 NW2d 386 (2004).

The purpose of this common law doctrine is to "relieve the parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen v McCurry*, 449 US 90, 94; 101 S Ct 411; 66 L Ed 2d 308 (1980). "For the sake of repose, res judicata shields the fraud and cheat as well as the honest person. It therefore is to be invoked only after careful inquiry [as to whether foreclosing plaintiff's case would protect] the interests served by res judicata." *Brown v Felsen*, 442 US 127, 132; 99 S Ct 2205; 60 L Ed 2d 767 (1979). "The burden of establishing the applicability of res judicata is on the party asserting the doctrine." *Richards v Tibaldi*, 272 Mich App 522, 531; 726 NW2d 770 (2006).

Historically, res judicata has generally been employed to bar a prior plaintiff (or its privy) from filing a second suit against the same defendant (or its privy). E.g. *Senior Accountants, Analysts and Appraisers Ass'n v Detroit*, 60 Mich App 606; 231 NW2d 479 (1975); 187 Mich App 191; 466 NW2d 357 (1991); *Sherrell v Bugaski*, 169 Mich App 10; 425 NW2d 707 (1988); *Svitojus v Kurant*, 293 Mich 291; 292 NW 637 (1940); *Northwest Home Owners Ass'n v Detroit*, 298 Mich 622; 299 NW 740 (1941). The purposes of res judicata, just reviewed, clearly apply in that setting. A party bringing a lawsuit has the obligation to raise all related claims at that time. To conclude the litigation and then file a new suit based on the same transaction greatly increases the cost to counsel and to the court, and risks the imposition of inconsistent decisions.

---

[2] Nothing other than plaintiff's complaint has been provided to us regarding the nature of this suit and we make no comment on its merits.

In the instant case, defendants do not assert that plaintiff previously filed suit against them. Rather, they assert that by failing to file her malpractice suit as a counterclaim to their district court collection action, she has lost the opportunity to do so. Defendants argue that we should apply the transactional test so broadly as to construe the entire course of an attorney-client relationship to be subsumed in the failure of plaintiff to pay a bill. We decline to do so, and note the long-standing precedent on this question.

In *Leslie v Mollica*, 236 Mich 610; 211 NW 267 (1926), the Supreme Court addressed precisely this question. It held that when a professional, (in *Leslie* it was a physician), files a collection case against a former client, the client is not required to plead her malpractice claim at that time and may do so later without being barred by res judicata. *Id*. at 615. According to the Court, "[T]he actions, one by the physician for services and the other by the patient for malpractice, are independent and remain so unless and until the patient, when sued for services, injects the issue of malpractice, either to defeat the claim or to obtain damages by way of recoupment or counterclaim." *Id*. The Court went on to explain that a client sued for payment has a choice: she may bring a counterclaim to the collection case in which case res judicata will apply to any later filed suit for malpractice,[3] or she may choose not to defend or counterclaim on the basis of malpractice in which case res judicata does not bar a later malpractice suit. *Id*. at 616-617. *Leslie* stated unequivocally, "We do not adopt the rule requiring the patient to make the defense of malpractice in justice's court when sued by the physician for services." *Id*. at 616.

Although decided many years ago, the *Leslie* decision remains good law. It has been regularly cited, including several times since 2000.[4]

Similarly, in *Van Pembrook v Zero Mfg Co*, 146 Mich App 87, 91-92; 380 NW2d 60 (1985), the parties had a contractual-sales-representative relationship that went sour. Defendant filed a suit seeking payment of sums due based on the agreement, and a consent judgment was entered. *Id*. at 92. Later, plaintiff filed suit alleging a wide range of claims involving fraud and breach of contract. Defendant argued that res judicata should bar the suit since plaintiff could have raised them in the prior case. *Id*. at 100. We rejected this argument despite reiterating that "Michigan applies the doctrine of res judicata broadly so as to include not only points upon which the court was actually required by the parties to adjudicate but also to include 'every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at that time.'" *Id*. at 100-101 (citation omitted). We concluded:

---

[3] As was the case in *Leslie*.

[4] *Bloch v Bloch*, unpublished opinion per curiam of the Court of Appeals, issued September 2, 2010 (Docket No. 290086); *Griffin v Reznick*, unpublished opinion of the United States District Court of the Western District of Michigan, issued October 28, 2008 (Docket No. 1:08-cv-50); *Pinnacle Underwriting v Goetz*, unpublished opinion per curiam of the Court of Appeals, issued May 31, 2005 (Docket No. 260400); *Rochlen v Landau*, unpublished opinion per curiam of the Court of Appeals, issued March 1, 2005 (Docket No. 249908).

The [prior] action . . . was instituted by defendant to recover sums due and owing on a promissory note and by virtue of plaintiff's account for goods sold by defendant to plaintiff pursuant to the sales agency agreement. The action in the present case is premised upon breach of the sales agreement by virtue of the defendant's misrepresentation as to the quality of the goods sold. These causes of action are distinct in subject matter and require entirely different set of proofs. [*Van Pembrook*, 146 Mich App at 101.]

In the instant case, defendants correctly cite MCR 2.203(A) and (E)[5] for the proposition that Michigan is a compulsory joinder state. Thus, when a party files a claim or counterclaim, she must join all her claims that arise out of the same transaction and occurrence. That does not mean, however, that Michigan is a compulsory counterclaim state. In *Salem Indus, Inc v Mooney Process Equip Co,* 175 Mich App 213, 215-216; 437 NW2d 641 (1988), we explicitly rejected defendants' position, holding that MCR 2.203(E) "is permissive, as opposed to compulsory" and "allows a party the option to maintain its counterclaim in a separate independent action."

Defendants do not rebut *Leslie*, *Van Pembrook*, or *Salem Industries*, other than to argue that these cases are no longer good law because Michigan now applies the transactional test. However, the transactional test was adopted in 1980 in *Goss v Monroe Auto Equip Co*, 409 Mich 147, 160; 294 NW2d 165 (1980), well before the decisions in *Van Pembrook* and *Salem*. And defendants cite no cases that indicate that the Supreme Court has abandoned the long-standing rule articulated in *Leslie*.[6]

---

[5] MCR 2.203 provides in relevant part:

(A) Compulsory Joinder. In a pleading that states a claim against an opposing party, the pleader must join every claim that the pleader has against that opposing party at the time of serving the pleading, if it arises out of the transaction or occurrence that is the subject matter of the action and does not require for its adjudication the presence of third parties over whom the court cannot acquire jurisdiction.

* * *

(E) Time for Filing Counterclaim or Cross-Claim. A counterclaim or cross-claim must be filed with the answer or filed as an amendment in the manner provided by MCR 2.118. If a motion to amend to state a counterclaim or cross-claim is denied, the litigation of that claim in another action is not precluded unless the court specifies otherwise.

[6] Plaintiff cites several Court of Appeals cases involving summary eviction proceedings. Plaintiff seeks to rely on those cases because res judicata was held not to apply to later actions. Defendants respond by pointing out that the summary eviction statute specifically limits the preclusive effect of such an action. We find little guidance in these cases as they turn on a

The cases cited by defendants do not support the claim of res judicata in this case. First, in most of the cited cases, the application of res judicata was directed at the plaintiff, or his privy, from the prior case. In *Wayne Co v Detroit*, 233 Mich App 275; 590 NW2d 619 (1998), the doctrine was applied so as to bar a municipality from again litigating whether a tax exemption applied to a particular property where the precise question had been heard and determined by the Tax Tribunal in a prior tax year. In *Adair*, 470 Mich at 121-122, the Supreme Court concluded that the Headlee Amendment complaint had been brought by parties in privity with the plaintiffs in a prior case that raised primarily the same claims.[7]

Defendants also rely on *Sprague v Buhagiar*, 213 Mich App 310; 539 NW2d 587 (1995), but it is also distinguishable and has a unique history. In that case, plaintiff and defendant entered into a land contract for defendant to purchase six rental units. *Id*. at 312. After plaintiff took possession, she learned that two of the units had been condemned by the city. *Id*. She

---

specific statute and not on the common law of res judicata. Accordingly, we do not rely on them.

[7] The *Adair* Court noted:

> In [the prior case] we resolved the question of the state's ability under Headlee to reduce funding [to schools], in the circumstances there presented, for existing programs.
>
> *   *   *
>
> [T]he statutory and regulatory requirements complained of in this case, and alleged to be "new" or "increased" activities since Headlee was enacted, existed during the pendency of [the prior case]. Moreover, the requirements, like those in [the prior case], have been imposed by the Legislature and executive bodies on local school districts for the purpose of providing public education. Thus, they are related to one another in time, space [and] origin. [*Adair*, 470 Mich at 121, 125 (quotation marks omitted) (second alteration in original).]

It is also worth noting that the *Adair* case involved unique circumstances as the state was facing the possibility of repeated Headlee suits regarding school funding each time a new regulation was issued. The Court observed that a failure to apply res judicata would

> allow each individual taxpayer in the state a chance to bring a separate suit alleging similar, but not identical, claims. It is, in short, an invitation to a total paralysis of government, both state and local, as it would deprive state and local officials, as well as citizens, of the ability to know with finality what the law is. Such an approach would surely bring the Headlee protections into disrepute and thus jeopardize them. We decline to convert Headlee into such a Frankenstein monster . . . . [*Adair*, 470 Mich at 126-127.]

Obviously, none of these concerns are relevant here.

stopped making monthly payments on the land contract, and defendant filed for summary possession in the district court. *Id*. Plaintiff did not respond to that suit, and the district court issued an order of possession to defendant. *Id*. Later, the plaintiff (the prior defendant) filed suit in circuit court seeking rescission of the land contract due to fraudulent inducement. *Id*. Defendant filed a motion for dismissal based on res judicata, which was denied, and the matter proceeded to trial at which plaintiff prevailed. *Id*. at 312-313. Defendant appealed arguing the trial court should have granted the pre-trial motion based on res judicata. *Id*. at 313. Noting that the fraud claim could have been raised in a counterclaim to the summary possession proceeding, the *Sprague* panel concluded that "under the state's broad rule of res judicata, plaintiff's claims are barred." *Id*.

*Sprague* is distinguishable because the claim for possession asserted a right under contract to the return of the property. Whether or not that contract was valid was squarely at issue, and plaintiff (then defendant), failed to raise it. Thus, there was a judgment that defendant was, pursuant to the contract, entitled to possession of the property. In the instant case, there is no challenge to the fact that plaintiff and defendants had a contract for services. It is not a claim for breach of contract or rescission of contract; it is a tort claim in which the existence and nature of the parties' contract is not at issue. The contract makes no promises other than for legal services. Plaintiff does not contest that legal services were provided pursuant to that contract; instead she claims that defendants committed malpractice, an action that is judged not by contract but by the standard of care that applies to all attorneys similarly situated.

We also note that the viability of *Sprague* is subject to questioning. Just a few months before it was issued, our Court published *Bd of Co Rd Comm'rs for the Co of Eaton v Schultz*, 205 Mich App 371; 205 NW2d 371 (1994), where plaintiff road commission sued an individual, and the suit was dismissed by the trial court because the individual previously filed suits relating to the condition of the roadway. *Id*. at 373-374. The first case was dismissed with prejudice pursuant to stipulation in exchange for foregoing costs. *Id*. at 374. Later the plaintiff filed suit based on a nuisance theory, and the commission raised the defense of release and res judicata. *Id*. The trial court denied that motion, and the suit was later dismissed on other grounds. *Id*. The Commission then filed suit against the individual asserting breach of contract for having not adhered to the stipulation to dismiss and alleging that they were now entitled to costs on the first case as well as the third. *Id*. The trial court concluded that the Commission's suit was barred by res judicata because it had been raised as a defense in the intrusive nuisance case and had been decided against the Commission. *Id*. This Court disagreed:

> For purposes of our analysis, the "first" case is Schwartz's intrusive nuisance suit against the road commissioners, and the "second" case is the road commissioners' breach of contract action against Schwartz. It is apparent that the road commissioners' breach of contract action was not and could not have been decided in Schwartz's intrusive nuisance suit because the same evidence would not sustain both actions. Only if the road commissioners had opted to bring a counterclaim on breach of contract grounds in the intrusive nuisance case would the breach of contract issue have arisen, and then only as a counterclaim. The most that was decided in the intrusive nuisance suit concerning the parties' stipulation was that the stipulation did not operate as a release, and so was an unsuccessful *defense* for the road commission.

-6-

To treat the *defense* of release as identical to an *action* for breach of contract for purposes of res judicata, as Schultz would have us do, overlooks their fundamental differences. Causes of action and defenses are not interchangeable. Here, for example, the fact of a breach and the question of damages are irrelevant in the release defense. We conclude that res judicata does not bar the road commissioners' breach of contract action. [*Schultz*, 205 Mich App at 376 (citation omitted).]

*Schultz* held that a former defendant is not barred from filing suit against the former plaintiff where the prior case was irrelevant to what must be determined in the new case, and that litigation of a defense in a prior case does not necessarily bar subsequent litigation in which that defense is relevant to or even the basis for the claim brought by the former defendant. *Id*. at 376.

Significantly, *Sprague* was decided after *Schultz*, and so *Schultz* should have controlled as binding precedent. However, Schultz was not cited in *Sprague*. Recently another panel of our Court in an unpublished opinion noted this aberration stating:

We note that the trial court did not rely on the fact that the claims had already been litigated in granting defendant summary disposition. Instead, the court relied on the fact that the claims *could have been litigated* in the Oakland County proceeding. See *Sprague v Buhagiar,* 213 Mich App 310; 539 NW2d 587 (1995). While *Sprague* indeed purports to bar an action involving a counterclaim that could have been brought in a prior proceeding, see *id.* at 313, another panel of this Court reached a contrary conclusion in *Eaton Rd Comm'rs v Schultz,* 205 Mich App 371; 521 NW2d 847 (1994). We need not address this conflict, however, in light of our conclusion that plaintiff's claims from his original complaint *actually were litigated* in the prior proceeding. While the trial court may have erroneously relied on the fact that the claims were not previously litigated but *could have been* litigated, we will not reverse a trial court if it reached the correct result for the wrong reasons. See *Phinney v Perlmutter,* 222 Mich App 513, 532; 564 NW2d 532 (1997). [*Karp v Michigan Nat'l Bank,* unpublished opinion of the Court of Appeals, issued February 27, 2001 (Docket No. 213703), p 8.]

Like the panel in *Karp,* we need not resolve the conflict between *Schultz* and *Sprague* because as noted above, *Sprague* is distinguishable. However, it is clear that *Sprague* should be applied with caution if at all.[8]

---

[8] Defendants also cite two recent unpublished opinions. Pursuant to MCR 7.215(C)(1), neither constitutes binding precedent, but we have reviewed them as persuasive authority. The first, *Stanton v Auto Owners Ins. Co.*, unpublished opinion of the Court of Appeals, issued October 25, 2016 (Docket Nos. 327007, 327644), is readily distinguishable. It involved a personal injury suit. The defendant in that case filed a declaratory judgement action seeking to force his insurer to defend him in the suit. *Id*. at 1. The trial court resolved the declaratory judgment action

Finally, we note generally that none of the purposes underlying res judicata apply in this case. First, the parties are not engaged in "the cost and vexation of multiple lawsuits." *Garrett v Washington*, 314 Mich App 436, 447; 886 NW2d 762 (2016) (holding that application of res judicata relieves "the parties of the costs and vexation of multiple lawsuit"). Second, the defendants' collection case involved no more than the filing of a complaint and entry of judgment by the court clerk. The issue of malpractice was not litigated in any fashion nor was defendants' performance, whether laudatory or negligent. The only issue was whether or not plaintiff had paid her bill, a matter that was resolved conclusively without a single court appearance, and the entry of default and default judgment were simultaneously entered by the clerk. Second, allowing the instant case to proceed does not require that judicial resources be expended a second time. The collection case did not require judicial resources to be expended on a claim or defense of malpractice; indeed, it required virtually no judicial resources at all. Moreover, had plaintiff interposed a malpractice claim in the district court case, the collection case, clearly one that belongs in district court, would have been transferred, along with the counterclaim, to circuit court. MCR 4.002. Finally, there is no risk of inconsistent decisions as the judgment in the collection case has no consequences that may prove contrary to a judgment obtained by either party in the malpractice suit.

We reverse the trial court's grant of summary disposition and remand for further proceedings. As prevailing party, appellant may tax costs. MCR 7.219(A). We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Michael J. Kelly
/s/ Douglas B. Shapiro

---

holding that the insurer had no duty to defend. *Id*. Later, after losing the personal injury case, he again sued his insurer, this time for indemnification. *Id*. at 1-2. So while the plaintiff had previously been a defendant in the personal injury case, his relationship to the insurer was always that of a plaintiff, first in the declaratory judgment action and then in the damages case and the issue was all but identical. In the second, *Anderson v Buckman, MacDonald & Bauer*, unpublished opinion of the Court of Appeals, issued December 15, 2011 (Docket No. 300459), res judicata was applied in a case very similar to the one before us, but we find its reasoning unpersuasive for the reasons set forth in this opinion.